UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

IN RE:

JAMES ROSS STEGER,            Case No. 24-12111
                                               Chapter 13

Debtor.

## MEMORANDUM OPINION AND ORDER

       This matter came before the Court on the Objection to the Debtor's Claim of Exemptions filed by Elizabeth Tang ("Tang"), the Objection of the Debtor, James Ross Steger ("Steger"), to Tang's Proof of Claim (ECF Claim No. 8), Tang's Motion to Dismiss or Convert the Case to Chapter 7, the Chapter 13 Trustee's Objection to Confirmation or in the Alternative Motion to Dismiss Pre-Confirmation, Tang's Objection to Confirmation, Tang's Motion to Extend Time to File Dischargeability Complaint, the Bankruptcy Administrator's Response to the Motion to Dismiss and Objection to Confirmation, and related pleadings. (Docs. 50, 94, 112, 123, 124, 139, 151, 152, 155). Proper notice of hearing was given, appearances were noted on the record, and an evidentiary hearing was held. Upon consideration of the pleadings, briefs, testimony, exhibits, arguments, and record, this Court finds that Objections to Confirmation of the Chapter 13 Trustee and Tang are due to be SUSTAINED and Tang's Motion to Dismiss or Convert is due to be GRANTED. The Court further finds that conversion of the case to Chapter 7 is the most appropriate result for the reasons below.

1

## Jurisdiction

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§1334 and 157, and the Order of Reference by the District Court dated August 25, 2015.

## Procedural Background and Findings of Fact

Pursuant to the Order Establishing Evidentiary Hearing Procedures entered in this matter, Counsel for Steger and Counsel for Tang filed a Joint Stipulation of Undisputed Facts ("Stipulation").(Docs. 154). The Stipulation provides as follows:

1. Steger filed his Chapter 13 Petition on August 22, 2024 (the "Petition"). He filed his proposed Chapter 13 Plan on August 22, 2024 (the "Plan"). After the 341 hearing, the Debtor amended the Petition, including amendment of certain Schedules.
2. Elizabeth Tang filed Proof of Claim number 8 on October 28, 2024.
3. On November 11, 2024, the Debtor objected to Proof of Claim number 8.
4. On November 12, 2024, Elizabeth Tang filed Amended Proof of Claim number 8.
5. On January 15, 2025, Debtor filed an objection to Amended Proof of Claim number 8.
6. Tang's claim related to a Consent Judgment she secured against Steger. Tang filed suit against Steger on April 27, 2021 alleging fraud related to her investment of $150,000 in Monster Trophy Whitetails Ranch, LLC (the "Ranch"). The Ranch purchased property in Kentucky for the business of running a hunting preserve. The case was settled a few weeks before trial by Steger entering into a Settlement Agreement for $265,000, $25,000 of which he paid in cash and $240,000 was to be paid over time at the rate of $4,500.00 per month, with interest. Tang and Steger agreed that Tang would not engage in collection action under the Consent Judgment so long as Steger was not in default under the Promissory Note, including making all required payments.
7. An event which allowed Tang to accelerate the amount due under the Promissory Note and Judgment was the sale of the Kentucky property by the Ranch. Upon learning of the sale of the Kentucky property, Tang accelerated the amount due under the Promissory Note and demanded payment in full.
8. Tang filed a motion to compel the attendance of the Debtor at a 2004 Examination and in that motion requested documents related to issues in the bankruptcy case. On December 10, 2024 Tang filed a Motion to Compel Debtor to comply with the 2004 Examination Duces Tecum [Doc 55]. On

2

        January 16, 2025, this Court entered its Order [Doc.97] compelling Debtor to produce the documents set forth in that Order. Under that Order, Debtor was to produce documents on or before January 23, 2025.
9. Steger represented he received, as the sole owner of all of the membership interest in the Ranch, $211,065.62 from the closing of the sale of the Kentucky property.
10. Steger used a portion of the $211,065.62 he personally received from the sale of the Kentucky property to cause his company, J.S. Training Systems, Inc (the "Corporation"), to purchase the property where his office is located.
11. On the Petition Date, JS Training Systems, Inc. owned the building located at 4412 Government St., Mobile, AL.
12. On the Petition Date, Steger owned golf clubs worth at least $1,500.
13. On the Petition Date, Steger owned two drum sets worth at least $10,000.
14. The Debtor transferred $80,000 to his son within one year of his filing bankruptcy.

(*Id.*)

Steger's initial bankruptcy schedules filed on August 22, 2024, value his 100% ownership interest in JS Training at $1.00, and reflect that he had cash on hand of $10,000.00 and bank deposits of $16,000.00 (Doc. 1). Approximately six months later, after the Trustee's Objection to Confirmation as well as Tang's Objection to Exemptions and Motion to Dismiss or Convert were filed, Steger amended his schedules on February 27, 2025, to list the value of his interest in JS Training at $50,000.00. (Doc.119).

At the hearing, Tang's counsel called the Debtor, James Steger ("Steger") to testify. Counsel for the parties stipulated to the admissibility of Tang's Exhibits 1-33 and Steger's Exhibits 1-11. Steger confirmed that he is the sole owner of J.S. Training Systems Inc. ("JS Training"). He also acknowledged his signature on the promissory note payable to Tang in the principal amount of $240,000.00. (Tang's Exhibit 2). Throughout his testimony, Steger indicated that he either did not know or could not recall various matters and events related to the details of his contractual agreement with Tang, the pre-petition State Court Litigation[1], the Settlement with Tang, and what

---

[1] In the Circuit Court of Mobile County, Alabama, Case No. CV 22-665.

ultimately happened to the $211,000.00 received from the sale of the Kentucky property ("Sale Proceeds"). Steger stated that he did not recall the State Court's ruling on Tang's Motion for Sanctions, requiring him to respond to discovery requests, that was entered 13 days prior to his bankruptcy filing. (Tang's Ex. 30). Upon further questioning, Steger thereafter acknowledged that he had attended the sanctions hearing.

When Tang's counsel asked Steger about his bankruptcy schedules, he stated that he did "not recall signing either one of them", did not know who prepared them, or where they got the information. Yet when subsequently asked by his bankruptcy counsel, he acknowledged that he had reviewed and signed the schedules. (See docs. 1, 119; Tang's Exs. 10 and 11). Steger also testified that except for Tang's claim, he was not in default on any of his debts when he filed bankruptcy.[2]

When questioned about his failure to comply with Tang's prior discovery requests and this Court's January 16, 2025 Order granting Tang's Motion to Compel, Steger stated that he gave all the documents to his counsel. Nevertheless he failed to provide, identify, or introduce any responsive documents. Tang's Exhibits reflect that it was necessary for Tang to obtain Steger's bank account information via third party subpoenas to financial institutions. (Tang's Exs. 12-15, 32-33). Steger testified that after the Sale Proceeds were deposited in the JS Training account, he moved the funds around upon the advice of his counsel and accountant. The evidence established that JS Training purchased a building at 4412 Government Street in Mobile, Alabama ("Government Street Property") in June 2024 and paid $42,563.25 toward the purchase at the closing. (Tang's Ex. 8). Steger testified that he intended to use additional funds from the Sale Proceeds to make improvements to the Government Street Property.

---

[2] He stated that he was a month behind on a vehicle he recently purchased but it was only because he did not receive the payment coupon and he had since remitted the payment.

4

When presented with bank records obtained by Tang, Steger admitted that $127,481.00 of the Sale Proceeds were deposited into a bank account in the name of his son, James Ross Steger Jr. dba Steger Health Systems at Hancock Whitney Bank in Mississippi ("SHS Account"). Although Steger was not the account holder or a signatory on the SHS Account, he used it as his own, signed his name to checks for the benefit of himself and JS Training, and deposited payments from JS Training's clients therein. (See Tang's Ex.32). The bank records also reflect that after the sale of the Kentucky property and prior to his bankruptcy filing, Steger moved funds between various accounts at different banks, depositing large sums of money into the JS Training account, contemporaneously making cash withdrawals therefrom, and obtaining cashier's checks payable to him personally.[3] (Tang's Ex. 12). When questioned about the banking transactions, discrepancies, and whereabouts of funds from the withdrawals and cashier's checks, Steger offered little information, and largely stated that he did not recall.

This Court found Steger's testimony to be less than forthcoming, evasive and argumentative. He denied or refused to admit matters which could not reasonably be refuted such as the bankruptcy filing date, orders entered by the State Court, his lack of discovery responses, and initially even review and approval of his bankruptcy schedules. He claimed that his counsel ("Ms. Caine")[4] and accountant instructed him to transfer funds from the Sale Proceeds, place a substantial amount of the Sale Proceeds into an account in his son's name, and move money around

---

[3] These include but are not limited to the following: deposits of $157,531.00 and $8252.00 into a JS Training account at Hancock Whitney on May 7, 2024 and withdrawing and obtaining a cashier's check made personally to Steger on the same day; deposits totaling approximately $138,531 on May 14, 2024, and a withdrawal of $138,448.50 on the same day and similar transactions for $4,500.00 on June 11, 2024, $40,000.00 on June 14, 2024, $14,653.16 on August 22, 2024; $8425.17 on September 6, 2024, and $54,692.59 on or about September 9, 2024. (Tang's Ex.12). Steger also obtained cash withdrawals in amount of $94,000.00 on May 3, 2024, and a post-petition cash withdrawal of $60,000.00 on October 17, 2024. (Tang's Exs. 13, 14).

[4] Steger referenced his litigation counsel as "Ms. Caine" but provided no further details. The identity of the accountant was not provided. Neither party was present at the hearing and Steger's allegations were not corroborated.

to various banking institutions and accounts. He also blamed Ms. Caine for failing to produce discovery responses and claimed that he gave her everything she requested. Yet Steger did not offer any evidence of the discovery responses that he allegedly provided to Ms. Caine. Further, Steger failed to provide any legitimate explanation for the multitude of convoluted banking transfers and account withdrawals that he made involving hundreds of thousands of dollars in transactions in the few short months between the sale of the Kentucky property and his bankruptcy filing. Steger's purported lack of recall was surprising, especially considering the substantial sums of money involved and the degree of effort expended in orchestrating such an array of banking transactions.

### *Denial of Confirmation is Warranted*

To initiate a Chapter 13 proceeding, the debtor must submit sworn statements disclosing assets, liabilities, income, expenses, and other pertinent information. See *11 U.S.C. § 301; Fed. R. Bankr. P. 1007*. Additionally, the Bankruptcy Code requires that chapter 13 bankruptcy plans be proposed in good faith and not by any means forbidden by law. *11 U.S.C. §1325(a)(1),(a)(6)*. Courts have noted that the "good faith" requirement is a safety valve through which attempts to twist the law to malevolent ends may be cast out. *In re Waldron*, 785 F.2d 936, 939 (11th Cir. 1986)(finding that Congress could not have intended that the debt-free, financially secure Waldrons be permitted to engage the bankruptcy machinery solely to avoid an enforceable option contract).The Eleventh Circuit's holding in *Waldron* stated in part that,

> With section 1325(a)(3) Congress intended to provide bankruptcy courts with a discretionary means to preserve the bankruptcy process for its intended purpose. . . .[W]henever a Chapter 13 petition appears to be tainted with a questionable purpose, it is incumbent upon the bankruptcy courts to examine and question the debtor's motives. If the court discovers unmistakable manifestations of bad faith . . . confirmation must be denied. Unmistakable manifestations of bad faith need not

be based upon a finding of actual fraud, requiring proof of malice, scienter or an intent to defraud. We simply require that the bankruptcy courts preserve the integrity of the bankruptcy process by refusing to condone its abuse. The cornerstone of the bankruptcy courts has always been the doing of equity. The protections and forgiveness inherent in the bankruptcy laws surely require conduct consistent with the concepts of basic honesty.

*In re Waldron* at 941.

Courts typically employ a totality of circumstances test in evaluating whether a debtor filed the petition in bad faith and the Eleventh Circuit set out a non-exclusive list of factors to be considered in the analysis. See *In re Kitchens*, 702 F.2d 885 (11th Cir.1983). The factors mentioned by the *Kitchens'* Court are:

> (1) the amount of the debtor's income from all sources;
> (2) the living expenses of the debtor and his dependents;
> (3) amount of attorney's fees;
> (4) probable or expected duration of the debtor's Chapter 13 plan;
> (5) motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13;
> (6) the debtor's degree of effort;
> (7) the debtor's ability to earn and likelihood of fluctuation in his earning;
> (8) special circumstances such as inordinate medical expense;
> (9) frequency with which the debtor has sought relief under the Bankruptcy Reform Act;
> (10) circumstances under which the debtor contracted his debts and his demonstrated bona fides, or lack of same, in dealings with his creditors;
> (11) the burden which the plan administration would place on the trustee;
> (12) the type of debt to be discharged and whether such debt would be nondischargeable;
> (13) the accuracy of the plan's statements of debts and expenses and whether any inaccuracies are an attempt to mislead the court;
> (14) extent to which the claims are modified and extent of preferential treatment among classes of creditors.

*Id.* at 888,889.

Here, consideration of the totality of the circumstances warrants a finding of bad faith. Review of Steger's schedules in light of the evidence and testimony reveals that he has not been forthright with regard to his financial transactions. He undervalued his wholly owned business and

other personal property in his initial bankruptcy schedules. He contrived an elaborate scheme to move money out of his business account, conceal assets; and transfer funds into his son's account before filing bankruptcy. He refused to provide discovery to Tang as a creditor and failed to comply with this Court's January 16, 2025 Order compelling him to do so. (Doc.97). Additionally, his lack of recall at the evidentiary hearing appeared to be intentionally evasive. His motivation for filing bankruptcy is also questionable as his bankruptcy schedules reflect that his income exceeds his expenses and he testified that except for the debt owed to Tang, he was not in default on any of his financial obligations on the Petition Date. Thus, the Court finds that the applicable *Kitchens*' factors are (1), (2),(5), (6),(10), and (13) and that they all support a finding of bad faith. The Court also finds that denying confirmation in this case is necessary to preserve the integrity of the bankruptcy process. Thus, the Objections to Confirmation filed by the Chapter 13 Trustee and Tang (docs. 65, 124) are due to be sustained and the Court must now evaluate whether dismissal or conversion is appropriate.

## *Conversion to Chapter 7 Is Warranted*

The Bankruptcy Code provides that, on request of a party in interest and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause. *11 U.S.C. §1307*. Cause includes but is not limited to denial of confirmation of a plan under section 1325. *11.U.S.C. §1307(5).*

In accord with the Response filed by the Bankruptcy Administrator, recommending conversion rather than dismissal (doc. 152), this Court finds that such result would be in the best interest of creditors and the estate. As noted above, the totality of circumstances supported a

8

finding of bad faith and denial of confirmation. The filing of bankruptcy creates both benefits and burdens for debtors. One of those burdens is that debtors have the duty to fully disclose all their assets. Here, Steger ignored the Order of the Court requiring him to respond to discovery. He also made banking transactions that were questionable, and which he failed to adequately explain. Therefore, additional investigation is needed. A chapter 7 trustee is uniquely situated to investigate allegations of non-disclosed assets and has powers unavailable to the Chapter 13 Trustee to pursue fraudulent transfers and liquidate non-exempt assets for the benefit of creditors. Thus, under the circumstances of this case, conversion to Chapter 7 is in the best interest of creditors and the estate as it will allow for a full investigation to rectify any abuse of the provisions, purpose and spirit of the Bankruptcy Code.

CONCLUSION

For the reasons above, it is hereby ORDERED, ADJUDGED, and DECREED as follows:

1. The Objections to Confirmation of the Chapter 13 Trustee and Elizabeth Tang are SUSTAINED;

2. Elizabeth Tang's Motion to Dismiss or Convert is GRANTED;

3. This case is converted to Chapter 7 and Terrie S. Owens is appointed as the Chapter 7 Trustee. The conversion fee is waived.

4. The balance on hand with the Chapter 13 Trustee, after payment of any outstanding filing fees, the Chapter 13 Trustee's commission, and Debtor's Counsel's pre-confirmation attorney's fees, shall be remitted to the Chapter 7 Trustee pending further order of Court.

5. Due to the conversion of the case, the remaining motions are not ripe for adjudication at this time. Thus, the Debtor's Objection to Tang's Claim is overruled *without prejudice* and Tang's Objection to the Debtor's Exemptions, and Motion for Extension of Time to Determine Dischargeability are Moot. New deadlines will be set pursuant to Bankruptcy Rule 1019 and such Motions may be re-filed in the context of the Chapter 7, if and when appropriate.

6. This Court retains jurisdiction to enforce the terms of this Order.

DATED: MAY 28, 2025

_____
JERRY OLDSHUE
CHIEF U.S. BANKRUPTCY JUDGE